Next case on today's docket is the case of Smelcer v. Vangorder. We have Mr. Mark Cochin for the appellant and Ms. Ella York for the appellee, and Mr. Cochin who begins. May it please the court, counsel. The ultimate facts are rather straightforward and I'll be brief. The defendant was traveling west on a two-lane road. The two plaintiffs were traveling east on the same two-lane road back on January 16, 2004, approximately 6 p.m. Therefore, it was dusk or dark, the same time of year it is now. At some point in time, the defendant observed a deer come from the south and attempt to cross the two-lane road. It's inconsistent as far as what the defendant saw because initially in the deposition, he stated he did not see the deer. However, on follow-up, he did say he did see the deer for a split second. What's clear he did not dispute is that the plaintiff never crossed into the defendant's lane, the defendant never crossed into the plaintiff's lane. The point of impact was in the defendant's lane of traffic. In addition, it's also not in dispute that there was no obstruction from the defendant going in a westerly direction with the deer. So there was no vehicles coming to obstruct the defendant's view. The defendant was very familiar with this road, traveled it every day, very familiar with South Illinois and the deer habitat. For the several reasons we believe Judge Bleier was incorrect in finding that there's no material facts in dispute in this case, I think this court takes into the inconsistencies in the defendant's testimony. Those in themselves are significant material facts. The first issue is the defendant in the motion for summary judgment and deposition stated he did not slam on the brakes because there were traffic following behind him. However, when he was inquired as to what traffic he was talking about, questioned, why did he not slam on the brakes? The defendant answered, because there were cars behind him. That would be more dangerous than actually slowing down. Yet when he was asked in his deposition how far were these vehicles from the defendant, he stated he did not know. Was it 100 feet, 200? I don't know. So we have a defendant who gave an answer, an explanation of why he did not slam on the brakes, because there were cars behind him. Yet he has no idea how far a distance there were behind him. So we believe that's a material fact for a trier of fact to determine, one, were there in fact cars behind this gentleman, since he has no idea. And two, the distance, was there enough of a distance for this defendant to take alternative means of precautionary measures? The defendant testified the only thing he did was to slow down. That's it. He did not also, nor did he attempt to swerve. When we asked him, how much did you slow down, the defendant said, I don't know. So again, these are factors we believe that a trier of fact should be determining whether or not he should have taken additional precautionary measures, and whether in fact the only issue or the only precautionary measure the defendant took was in fact satisfactory. What's your theory on what he should have done? Well, I think he should have taken additional precautionary measures, Judge. And what's that? Well, I think a jury could consider the evidence and determine when in fact he says he saw a deer. Initially his testimony was he never saw a deer. Then he said he did see a deer for a split second. Well, in your issues instruction, what are you going to tell the jury that he did that breached the reasonable standard of care? What's in your complaint? I was just going to say, thank you, Judge. Well, not having a proper lookout, going too fast for conditions. There's other in our complaints that we talked about. The thing about this is what precautionary measures, if any, he really didn't take in. He said he just slowed down a little bit. And I think what's really important is he said he didn't have enough time to respond. And I think that's for the jury to determine whether or not his defendant's actually telling the truth or not. Because in his deposition, he stated as far as reaction time, Judge, his answer to that question was I slowed. I applied pressure on brakes. I did slam on brakes, but I just slowed down enough to make sure I didn't completely destroy the car or total the car. So what's going on here is the defendant said I didn't have enough time to react, but I have enough time to process in my mind how I'm going to respond to this deer because I don't want to total my car. And I think when the jury hears this analysis that's going through the defendant's head of how he responded because he's trying to take care of his vehicle, I think that a reasonable trier of fact may decide that he had more time to respond in what has been alleged. In his deposition, was there questions about his speed? Yes, there was. There was, and was there questions about being distracted or other passengers in the car, something that could have distracted him from receiving the deer in time to avoid it? Excellent questions. When he was asked, and it's in the brief, when he was asked if he normally goes with speed limit, he said he normally goes with the posted speed limit. He agreed, I believe, that it was 55. He did not dispute that, and I said was that what you were going, sir? He said no. His answer was I probably was going about 45 miles per hour. Okay, so he didn't know for sure, but probably. So what he's saying is, again, I think a jury can take into consideration was he going slower or was he not. It's don't know, inconsistency. Number two, although he said he was going lower than the speed limit, when he was asked whether or not he had the radio on or he was playing CDs, he said he could not remember. Again, when you take that into fact, and the fact that there was nothing obstructing his view, and we have a deer coming from the south, crossing over the plaintiff's lane, crossing through the plaintiff's lane, and the point of impact being in the defendant's lane, again. I forgot again. What was the day of the date and time? January 16, 2004, at around 6 p.m. 6 p.m. So dusk, dawn. Dusk. Mr. Pochen, the Fentah cites to a Georgia case as persuasive. Yes. Which does seem to have a similar factual scenario, and I guess I'm interested in what your take is on the summary judgment there where the court determined that a deer's sudden appearance is not foreseeable or avoidable by the defendant. Judge, my recollection of the Georgia case was this was a trooper, a law enforcement person, and this deer, I guess he was going at a high rate of speed, I believe, but the point of the matter is this deer came out and the officer, law enforcement, never saw the deer. And that's different than what this gentleman testified to, that he either didn't see it or saw it for a split second? Initially he said he didn't see the deer, and then in follow-up it was, now, are you sure you didn't see the deer? Well, I did see it for a split second, but it really came upon me. So we have a first he said he didn't see it, then after a follow-up question he admits it, well, yeah, I did see the deer. In this Georgia case, the trooper never saw the deer, period, is my recollection. It just came and just hit him. And so I think that that is significantly different. And again, the fact scenario of this being in Starr, Illinois, the time of year, he travels this road every day two or three times. He's very familiar with Illinois habitat and deer, which is what he testified in the deposition. So the heightness and awareness is significantly different, I believe, than the Georgia case. The area this occurred in, is it described in the record as a rural area, or how would you describe it? Yes, it's generally rural. Trees on both sides of the road? Yes, it's actually open fields, yes. Open fields. Yeah, I don't know if the record necessarily went into all that, but I think it's the Heron Calt Road down in Williamson County, it's a two-lane road, it's rural on both sides of impact, point of impact. Part of your theory is that people in southern Illinois should be on notice that deer may run out in front of them and they should drive accordingly? Well, I mean, obviously in southern Illinois, any time we drive around there's deer coming out, and I think we do have to be more heightened with reality than we are, and I think some of the cases that have been cited initially when Judge Palmer denied the motion to dismiss, was some animal ran out in the middle of Chicago. Well, obviously there's a certain expectation level of being a little different than an animal running wild in the inner city, as a rural area like southern Illinois does, and you're exactly right, that I think when you're traveling in a dust area, you know an area that you're familiar with, if you have open land there, there's going to be some areas where deer tend to populate and are about, and you do have to take caution. But, you know, again, I think what's important, other than what I've already said, is, you know, I think it's really up to the jury to determine the credibility of this defendant, and I think when the jury hears these inconsistencies of, well, I didn't see the deer, well, actually I did see the deer, well, I didn't slam on the brakes or swerve or do anything else because I didn't want to hurt my car, or because there was traffic behind me, yet when asked, well, how far was the traffic, well, 100 feet, I don't know, 200 feet, I don't know. I mean, quite honestly, there's a question of whether or not there was any traffic even behind him, and that's the burden on the defendant to show this traffic was up there. As of right now, we've got a defendant saying, I did nothing but just slow down to protect my car, and that's the analysis that he's made to protect his car because of traffic behind him. Yet it's not been established by the defense at all that, in fact, there was traffic behind him. In fact, there – Did he actually say to protect his car? I thought it was so that he wouldn't crash his car and – So that he would not completely destroy the car or total the car. Right. So he said he did not slam on the brakes, but he slowed down. So I guess the question becomes, I would think you would have a better shot at slamming on your brakes to avoid the deer or swerving, but if you're slowing down, you're still going at a speed. And when we asked him how much he slowed down, he said, I don't know. But again, I mean, when we asked what type of vehicles had been anywhere behind him, he said he didn't know. He had no idea. This Nywald case cited by the defense is close on the facts, but that wasn't summary judgment, was it? Which one is that? The Nywald case, Nywald v. Fry, 2nd District, 1999. Yes, I believe that that's correct. It was a trial. Is that correct? Yes. And I think, if I may, the Turner case is actually – the defense side is actually really persuasive for the plaintiffs. I mean, if you look what happened in this case, this is a 2nd District case. This is where, again, the plaintiff was coming in one lane, the defendant other. The plaintiff actually ended up in the defendant's own lane. Okay? The trial court granted summary judgment. Appellate court reversed and said, no, it's up to the trial of the fact to determine what the defendant – what actions or conduct the defendant should have taken even though the plaintiff was in the defendant's lane. That is the Turner v. Rossner case. I mean, our case is significantly different. Our case is – the plaintiff stayed in their own lane. Here, the case of the defendant's side, the plaintiff actually ended up in the defendant's lane. And the appellate court said just even though the plaintiff was in the defendant's lane, the trial of fact – in fact, the court held. The issue here is not merely what response would have been reasonable. The issue is also whether and to what extent the defendant's conduct contributed to the very short time in which he could have responded. Exactly in this case, the issue is for the trial of fact to determine what conduct. Was it reasonable? Was it not reasonable? In addition, the 2nd District case that the defendant signed in their brief, the court held. Thus, the question of whether the defendant reached his duty of care is one that should have been reserved for the trial of fact. I couldn't agree more than what the defense sided in their case. It's up to that breach of the duty. Now, is this a comparative case? Maybe. That's for the jury to decide. And that's the whole point is we have inconsistent testimony by a defendant. After the court weighs it, the trial of fact, maybe they'll believe it, maybe they won't. I think the other issue, even if the defense acknowledges in their own brief the inconsistency on page 3 of their brief, regardless of the consistency of the defendant's testimony. Regardless. That seems to me to say, even if regardless of the defendant's inconsistent testimony, there is still no issue with trial of fact. We've got inconsistencies all over the place. And the plaintiffs believe that they have a right to confer in front of a jury to hear these inconsistencies and these credibility issues and to weigh the evidence to determine whether or not the defendant was negative. What's your reaction to your opponent's statement on page 7 of the brief that says, It is not reasonably foreseeable to a person on a roadway that a wild deer would suddenly dart out in front. Judge, I guess it kind of goes back to the question earlier. You can pull out a paper all the time, statistics. There are thousands and thousands across Illinois, Michigan, Wisconsin of accidents causing deer. I mean, it's very, very, very foreseeable. In fact, it's very highly likely. I mean, just note my own personal experience. Just the other day, you know, you have issues and you have to be careful. And it's certainly foreseeable that if you do hit a deer or hit something, that's going to cause damage, not only to you, but potentially somebody else. I don't think that's out of the realm of possibility or inconsistency at all. So, you know, I guess at the end of the day, the plaintiffs can respectfully request that, you know, these are issues as the case, breach of duty of care is normally for the trier effect. I believe with the case I did by the defendant, this is normally issues that regulated in front of a trier effect. And that's all the plaintiffs are asking for is to have their day in court in front of a juror, Your Honor. Thank you. Thank you. Thank you for the opportunity for rebuttal. Thank you. Ms. York. Thank you, Your Honor. Good morning. It's our position that the trial court was correct in creating the motion for summary judgment because there really are no genuine issues of material fact with regard to this question. After the depositions of the parties were taken, it was clear that there are no genuine issues because both parties agree the injuries to the plaintiffs occurred when a deer suddenly appeared in the roadway, was hit by the defendant, and then flipped into the plaintiff's lane and was subsequently hit by the plaintiffs. There was no reasonable action that the defendant could have taken to avoid the deer, just as there was no reasonable action that the plaintiffs could have taken to avoid the deer. The injury to the plaintiffs was caused by the deer's sudden appearance in the roadway and not by any action taken by the defendant. The plaintiff has pulled several quotations from the defendant's testimony in an attempt to raise a credibility issue, but a complete reading of the deposition of the defendant demonstrates the consistency of his testimony, and any lack of recall of details, such as whether or not the radio was playing at the time, is attributable to the fact that his deposition was taken nearly six years after this accident occurred. I believe the accident was on January 14th, 2004, and the defendant's deposition was not taken until August 26th of 2009. There's no dispute that the defendant's car didn't hit the plaintiff's car, only the deer that the defendant hit hit the plaintiff's car. Is that right? Both cars stayed in their own lane. The defendant was traveling in his lane of traffic. The deer suddenly appeared in the roadway. He hit the deer, and when he hit the deer, the deer flipped into the plaintiff's lane, and they subsequently hit the deer. The defendant did exactly what you would expect a reasonable person to do. A deer suddenly appeared. He applied his brakes. He didn't swerve. He didn't slam on his brakes. And with regards to whether or not there was anyone behind him, his testimony was consistent throughout the deposition. He said there were cars traveling behind him. He did not know exactly how far. It was 6 o'clock at night. He knows there's a car behind him. Whether or not it was 100 feet or 300 feet, he couldn't recall five years later at the deposition. That doesn't necessarily mean that, you know, there's any issue of credibility there. It just means he couldn't recall how far behind him the cars were traveling. Do you really think it's not reasonably foreseeable in southern Illinois that a wild deer will dart in front of a car? I believe it's foreseeable that a deer would dart in front of a car traveling on a rural road in southern Illinois at 6 o'clock at night. I absolutely do. And I think that his reaction is exactly what you would expect a reasonable person to do. It's always what I've been told to do, slam on your brakes, don't swerve. You know, had he swerved, he could have done certainly more damage to the plaintiffs going into their lane and hitting them head-on rather than the deer hitting them. So I believe the defendant's actions were exactly what you'd expect a reasonable person to do. Apply the brakes, you know, try to avoid hitting the deer. But there was just not enough time. He saw it a split second before he did. He couldn't miss the deer. He did exactly what a reasonable person would do. And that both parties testified that that's what happened. There really are no questions of fact left to be determined by a jury. Therefore, we think the trial court's summary judgment should be granted. Thank you. Thank you. Do you have for both, Mr. Cochen? I'll ask you a quick, quick, finally hit me. You said this may be a comparative negligence case. Who's negligence are we going to compare? Judge, all I was trying to say really is I think that it's up for the jury to decide, you know, whether or not they believe the defendant in the situation acted reasonably or not. And I think what it goes into, again, what I was saying is when you take into consideration the fact that the defendant says he normally goes 55, you just start from the beginning. He normally goes 55, but in this case, he may have been going less, probably 45. But he didn't know. So he doesn't really know what speed he's going. A road that he's well-traveled, familiar with some of my habitat. So that's the first potential question. Then we go into the issue of, well, did you see the deer or not? Initially, he says, well, no. And then follow up, well, actually, did you see the deer? And he says, well, yeah, I did see it for a split second. Then we go into, well, what were you doing? Were you listening to radio, CD, you know, talking about the strategies? Don't remember. So a lot of things he doesn't remember, he admits there's no obstruction in front of him. And so this deer would have had to have crossed the plaintiff's lane and then into the defendant's lane. And the response of he slowed down, fine, but how much did you slow down? Don't know. That's what he said. I don't know how much I slowed down. So I guess, again, when you factor this into all of this, and when you ask about, well, if you don't know how you slowed down, did you do anything other than just slowing down? Well, did I swerve? No. Did I really try to go through the circuit? Is there anything in the record other than I didn't see it or I saw it a split second before? Is there any indication that there's any more time to react than that? I believe, I don't know if there were, on the plaintiff's depositions, there was some testimony about having. I mean, is there anything from your client that they saw the deer coming from a great distance and they slowed down or something of that nature? Is there anything from your client? Not that I recall. I think there was some testimony that the passenger may have seen something at some point, but I don't know exactly when or what. Passenger in whose car? In the plaintiff's vehicle. So there may have been something at that particular instance. But, again, I guess the whole question, really what it comes down to, is if you're driving 6 o'clock at night into an area that you're familiar with, you're familiar with the habitat, as I believe this gentleman is, the whole question is this. Is it such out of the realm of a legal conclusion that a trial court should deny it and that the plaintiff will have their day in court in front of a jury? As this court knows, it's a very, very drastic remedy. And what I'm saying is this. We allow the jury to have their right to weigh all the evidence in the testimony, and if they decide in behalf of the defendant, so be it. But I think the plaintiffs, following the case law, that the trier of fact generally decides these issues. That's what we're asking. Thank you. Thank you, Mr. Cochin. Thank you both for your briefs and arguments, and we'll take the matter under review.